**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

————————————————

No. 25-10356

Non-Argument Calendar

————————————————

ALEX EL BACHIRI,

*Plaintiff-Appellant,*

*versus*

MEDICREDIT, INC.,

MD NOW MEDICAL CENTERS, INC.,

doing business as
MD Now Urgent Care,

*Defendants-Appellees.*

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:24-cv-61592-WPD

————————————————

Before JILL PRYOR, KIDD, and WILSON, Circuit Judges.

PER CURIAM:

Alex El Bachiri appeals the district court's dismissal of his complaint for lack of standing. After careful review, we affirm.

## I. BACKGROUND

In August 2024, Bachiri, through counsel, initiated a lawsuit against Medicredit, Inc. and MD Now Medical Centers, Inc., alleging that they violated the Florida Consumer Collection Practices Act ("FCCPA") and the Fair Debt Collection Practices Act ("FDCPA") when attempting to satisfy a debt he allegedly owed.

Bachiri's operative amended complaint alleged the following: Earlier in the year, Bachiri suffered a small wound and received stitches at MD Now, an urgent care center. He returned to the office for stitch removal a couple of weeks later, and, per instructions from the front desk, paid for the service up front. After waiting for two hours without being seen, Bachiri decided to have his stitches removed elsewhere, and he received a refund from MD Now before leaving the office. "Much to [Bachiri's] surprise," MD Now re-billed him for the unperformed service, sent his bill to collections, "and attempted on multiple occasions to collect $202.88 from him." After Bachiri unsuccessfully attempted to alert MD Now to their error, MD Now hired a debt collector, Medicredit, who sent Bachiri additional collection letters.

Bachiri asserted that his attempts to resolve this billing error "resulted in both wasted time and frustration," including the time he required to "consult[] with an attorney to learn his legal rights." He also contended that he "suffered emotional distress over being in collections for a debt that [wa]s not owed, which . . . resulted in

frustration, stress, anxiety, surprise, shock and[,] embarrassment." Bachiri further alleged that he "suffered from the threat of, or actual reporting, of this fictitious collection on one or more of his credit reports."

On MD Now and Medicredit's motion, the district court dismissed Bachiri's complaint without prejudice for lack of standing. The court found that Bachiri's amended complaint did not allege that he "suffered any tangible injuries from receiving" the collection letters, such as the submission of unnecessary payments or negative impacts upon his credit score. It concluded that Bachiri's alleged "conjectural harms," i.e., emotional distress and wasted time, were insufficient to satisfy Article III standing. Bachiri now appeals.

## II. STANDARD OF REVIEW

The question of Article III standing "is a threshold jurisdictional question that we review de novo." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 923 (11th Cir. 2020) (en banc). At the pleading stage, "[w]e accept as true the allegations in the complaint and attached exhibits and draw all reasonable inferences in favor of the plaintiff[]." *Glynn Env't Coal., Inc. v. Sea Island Acq., LLC*, 26 F.4th 1235, 1240 (11th Cir. 2022).

## III. DISCUSSION

Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. CONST. art. III, § 2. If there is no case or controversy, federal courts have no power to hear a case. *Drazen v. Pinto*, 74 F.4th 1336, 1339 (11th Cir. 2023)

(en banc). To establish Article III standing, the plaintiff must establish that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). We are only concerned here with whether Bachiri established an "injury in fact, the first and foremost of standing's three elements." *Id.* (citation modified).

To do so, Bachiri "need[ed] to plead (and later support) an injury that is concrete, particularized and actual or imminent, rather than conjectural or hypothetical." *Muransky*, 979 F.3d at 925. While "general factual allegations of injury can suffice" at the pleading stage, these "allegations must plausibly and clearly allege a concrete injury." *Id.* at 924 (citation modified).

"A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 578 U.S. at 340. "The most obvious [concrete injuries] are traditional tangible harms, such as physical harms and monetary harms." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). "Various intangible harms can also be concrete[;] [c]hief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.*; *see Spokeo*, 578 U.S. 340. "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341; *see TransUnion*, 141 S. Ct. at 2205; *Muransky*, 979 F.3d at 926.

In alleging his FCCPA and FDCPA claims, Bachiri asserted that he was forced to contact Medicredit and MD Now to correct

their billing error, and the time he spent unsuccessfully disputing the collection efforts left him frustrated, stressed, embarrassed, among other things, and with no choice but to contact an attorney. Bachiri maintains on appeal that his "wasted time disputing the debt, wasted time consulting counsel, and emotional distress" are "textbook" Article III injuries sufficient to establish standing at the pleading stage. We disagree.

Bachiri's allegations of harm primarily involve his "wasted time" dealing with the error. But Bachiri cannot rely on "self-imposed injur[ies] to satisfy Article III." *Nelson v. Experian Info. Sols. Inc.*, 144 F.4th 1350, 1354 (11th Cir. 2025). "There is no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury." *TransUnion*, 141 S. Ct. at 2209 (citation modified); *see also Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 937, 939 (7th Cir. 2022) ("Making a call to a debt collector is not closely related to an injury that our legal tradition recognizes as providing a basis for a lawsuit. Nor is seeking legal advice.").

Bachiri does not allege that he spent any money disputing the debt, that he responded to the collection letters by making a payment or promising to do so, or that the reporting of this incorrect information harmed his credit score or financial prospects. *See Nelson*, 144 F.4th at 1356 (noting that "information that merely exists in a credit file has no real-world effect unless it is distributed to another to view or use" where plaintiff did not allege that the information affected her credit or resulted in emotional or

psychological injury); *see also Pierre*, 29 F.4th at 939 (holding that a plaintiff lacked standing to bring a FDCPA claim where she "did[] [not] make a payment, promise to do so, or other-wise act to her detriment in response to anything in or omitted from [a] letter" related to an expired debt).

Bachiri points us to our decisions in *Walters v. Fast AC, LLC, Pedro v. Equifax, Inc.*, and *Losch v. Nationstar Mortgage, LLC*. However, these comparisons miss the mark, because in those cases, "the consumer spent money and time to correct an error *that itself caused a concrete harm*." *Nelson*, 144 F.4th at 1355 (emphasis in original) (rejecting the plaintiff's attempt to make similar comparisons to *Walters*, *Pedro*, and *Losch*, among other cases).

In *Walters*, we concluded that "lost time, money, and peace" were "garden-variety injuries in fact," 60 F.4th 642, 649 (11th Cir. 2023), but only after explaining that the plaintiff expended time and money correcting an error in his credit report that negatively impacted his credit score and left him feeling "anxious, exploited, embarrassed, and worthless," *id.* at 648. In *Losch*, we found standing where a non-existent debt was reported to third parties, and the plaintiff "testified that he suffered from stress, anxiety, and lack of sleep from the aftermath of his Chapter 7 bankruptcy discharge and devoted nearly 400 hours to correcting the inaccurate information on his credit report." 995 F.3d 937, 943 (11th Cir. 2021) (citation modified). Likewise, in *Pedro*, we concluded that "the reporting of inaccurate information" to third parties, which also caused the plaintiff's credit score to drop by more than 100 points, "ha[d]

a close relationship to the harm" recognized by the tort of defamation. 868 F.3d 1275, 1280 (11th Cir. 2017). We further noted that the plaintiff alleged a concrete injury in the form of "lost time attempting to resolve the credit inaccuracies." *Id.* (citation modified).[1]

In none of these cases did we hold "that a consumer's effort to correct an otherwise harmless error . . . [wa]s, by itself, a concrete injury." *Nelson*, 144 F.4th at 1356; *see also Spokeo*, 578 U.S. at 342 ("[N]ot all inaccuracies cause harm or present any material risk of harm."). Thus, Bachiri's assertions of wasted time are insufficient to satisfy Article III.

Bachiri's vague allegations of "frustration, stress, anxiety, surprise, shock[,] and embarrassment" fair no better, as he generally alleged that the time spent disputing the debt caused these ailments without further factual support. *See Muransky*, 979 F.3d at 924 (noting that "mere conclusory statements do not suffice," even

---

[1] Bachiri also relies on *Toste v. Beach Club at Fountainbleau Park Condominium Association, Inc.*, No. 21-14348 (11th Cir. Sep. 7, 2022). As an unpublished decision, *Toste* is not binding authority on this panel. *United States v. Morris*, 131 F.4th 1288, 1293 n.3 (11th Cir. 2025).

And, in any event, the *Toste* plaintiff asserted that he consulted with counsel to help in "defending against a legal action taken by [the] debt collector," which we concluded "wa[s] separable from the costs of bringing the debtor's own lawsuit." *Toste*, slip op. at 11. Further, we recognized that "the defendants caused concrete harm before [the plaintiff] ever consulted with a lawyer, by filing a claim of lien against his home for an inaccurate amount and refusing to release the line unless he paid more than he really owed." *Id.* Bachiri alleged no similar facts here.

at the pleading stage (citation modified)). And, in this context, Bachiri's assertions of emotional distress are no more than "conjectural" or "hypothetical" since he has not identified any actual harm that resulted from Medicredit and MD Now's wrongful collection attempts that would generate such psychological injuries. *Id.* at 925; *see also Pierre*, 29 F.4th at 939 (holding that "[p]sychological states induced by a debt collector's letter," such as confusion and worry, were "insufficient to confer standing").

While Bachiri also contended there was the threat that "this fictitious collection" would be reported on "one or more of his credit reports," "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation modified) (discussing a claim for injunctive relief). Again, Bachiri "cannot manufacture standing merely by inflicting harm upon himself" based on "hypothetical future harm that is not certainly impending." *Muransky*, 979 F.3d at 931 (citation modified); *see Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1345 (11th Cir. 2021) (Plaintiff "cannot conjure standing here by inflicting injuries on himself to avoid an insubstantial, non-imminent risk of identity theft."). In this case, there is no indication that the reporting of Bachiri's wrongful debt to third parties was imminent, definite, or "certainly impending." *Muransky*, 979 F.3d at 931.

Indeed, the evidence provided by Medicredit and MD Now in the district court demonstrated that he successfully disputed the billing error, and the $202.88 charge was removed from his collection account in June 2024, approximately two months prior to the

initiation of the instant action. And, even if the debt remained on Bachiri's account, the amount purportedly owed was lower than $500, which likely would not appear on any credit report. *See Have medical debt? Anything already paid or under $500 should no longer be on your credit report*, CONSUMER FINANCIAL PROTECTION BUREAU (May 8, 2023, at 4:08 ET), https://www.consumerfinance.gov/about-us/blog/medical-debt-anything-already-paid-or-under-500-should-no-longer-be-on-your-credit-report.

In sum, "we will not imagine or piece together an injury sufficient to" satisfy Article III, "and we are powerless to create jurisdiction by embellishing a deficient allegation of injury." *Muransky*, 979 F.3d at 925 (citation modified). We agree with the district court that Bachiri lacked standing to pursue his claims against Medicredit and MD Now in federal court.

## IV. CONCLUSION

We **AFFIRM** the dismissal of Bachiri's complaint without prejudice.